FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 02, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

GEORGE B.,

                          Plaintiff,

    v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[1]

                          Defendant.

NO: 1:18-CV-03212-FVS

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 10 and 15. This matter was submitted for consideration without oral argument. The Plaintiff is represented by Attorney D. James Tree.

_____

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER ~ 1

The Defendant is represented by Special Assistant United States Attorney Michael Howard. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 10, and **DENIES** Defendant's Motion for Summary Judgment, ECF No. 15.

### JURISDICTION

Plaintiff George B.[2] filed for disability insurance benefits and supplemental security income on June 7, 2012, alleging an onset date of October 5, 2011. Tr. 180-92. Benefits were denied initially, and upon reconsideration. Tr. 116-19, 123-27. Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on July 8, 2014. Tr. 34-69. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ denied benefits, Tr. 16-33, and the Appeals Council denied review. Tr. 1-6. On February 17, 2017, the United States District Court for the Eastern District of Washington granted the parties' stipulated motion for remand, and remanded the case for further proceedings. Tr. 497-508. On April 17, 2017, the Appeals Council vacated the ALJ's finding, and remanded for further administrative proceedings. Tr. 492-96. On April 5, 2018, Plaintiff appeared for an additional hearing before the ALJ. Tr. 434-81. At this hearing, Plaintiff

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

amended to a closed period of disability from the alleged onset date to January 1, 2016, due to medical improvement and return to work. Tr. 414, 437. On August 24, 2018, the ALJ denied benefits for the closed period of October 5, 2011 through January 1, 2016. Tr. 411-33. The matter is now before this court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 48 years old at the time of the first hearing. *See* Tr. 225. He graduated from high school and has two college degrees. Tr. 230, 472. At the first hearing, Plaintiff testified that he lived by himself; and at the second hearing he reported that he lived with his disabled mother, and helped take care of her, during the closed period. Tr. 46, 444. Plaintiff has work history as a forest firefighter, logger, machinist, carpenter, landscaper, groundskeeper, assembler, child monitor, bouncer, material handler. Tr. 41-45, 471. At the time of the first hearing, Plaintiff reported he volunteered at the local food bank. Tr. 49. Plaintiff testified at the first hearing that he stopped working his feet were swelling. Tr. 42.

Plaintiff reported that he could not work during the closed period because of pain in his knees, lower back, and shoulder. Tr. 461, 465. He testified that he has pain in his right shoulder when reaching "past 90 degrees," he has to lie down once

or twice a day for up to 45 minutes, and he has "a problem with being able to stick with something for more than just 30 minutes or so." Tr. 47, 53, 61.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The

ORDER ~ 4

party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the

ORDER ~ 5

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

§§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the

claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the

analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the closed period. Tr. 416. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease; degenerative joint disease of the left knee; obesity; and visual deficits. Tr. 417. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 418. The ALJ then found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in so much as he can lift and carry ten pounds occasionally and less than ten pounds frequently; stand and walk for four hours combined; push and/or pull with the left lower extremity, such as for the operation of foot pedals, occasionally; sit for two hours at a time, after which he needs usual and customary breaks, but he can sit for a total of six hours in eight hour workday; perform postural activities occasionally, except never climb ladders, ropes, or scaffolds; occasionally crouch [and] balance; occasionally reach bilaterally overhead; visual acuity (near acuity) is frequent for reading and fine detailed work; and he must avoid concentrated exposure to vibration and hazards, such as heights and dangerous moving machinery.

Tr. 419. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 424. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: courier, storage rental clerk, and office helper. Tr. 425. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from October 5, 2011, through alleged closed period of January 1, 2016. Tr. 426.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 10. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ erred at step two;

2. Whether the ALJ properly considered the medical opinion evidence; and

3. Whether the ALJ properly considered Plaintiff's symptom claims.

## DISCUSSION

### A. Step Two

Plaintiff argues the ALJ reversibly erred by finding that his right upper extremity was not a medically determinable impairment at step two. ECF No. 10 at 3-5. At step two, a claimant must establish that he or she suffers from a medically determinable impairment. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004-1005 (9th Cir. 2005). The claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § 404.1508 (1991). "Under no circumstances may the existence of an impairment be established on the basis of symptoms alone." S.S.R. 96-4p. Thus, in general, "regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities, i.e., medical signs and laboratory findings." *Id.*

Here, the ALJ found that Plaintiff "also complained of right shoulder pain, but the objective clinical evidence did not reveal any abnormalities in the shoulder that would qualify as a medically determinable impairment." Tr. 417. In support of this finding, the ALJ noted that (1) in May 2013 Plaintiff had decreased strength of 4/5 in the right upper extremity, but "no imaging was taken at this time to confirm the presence of an impairment in the shoulder"; and (2) right shoulder x-rays form February 2015 show "a possible old injury with mild widening of acromioclavicular joint," and this "'possible' old injury, without more clinical verification, is insufficient to establish a medically determinable impairment." Tr. 417-18 (citing Tr. 322-24, 653, 718). The ALJ also found Plaintiff "made very infrequent complaints of right shoulder pain" between May 2013 and March 2015; and "did not seek emergency evaluation for his right shoulder until over a year after the end of the closed period." Tr. 418.

Plaintiff argues the ALJ erred in finding his right upper extremity impairment was not a medically determinable impairment. ECF No. 10 at 3-5. The Court agrees. First, contrary to the ALJ's finding, the record contains consistent reports by Plaintiff of ongoing upper extremity pain across the relevant adjudicatory period. Tr. 322, 344, 355-56, 360, 365, 391-92, 398-99, 642, 653-54, 840-41, 850, 864, 872, 878. That said, as noted above, in order to find an impairment medically determinable, there must be objective medical evidence aside from Plaintiff's subjective claims, including: (1) medical signs "shown by medically acceptable clinical diagnostic techniques" that are "shown by observable

facts that can be medically described and evaluated," and (2) laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508 (1991), 404.1528 (2006). Here, the ALJ found the x-rays of Plaintiff's right shoulder showing a mild widening of acromioclavicular joint was "insufficient to establish a medically determinable impairment" due to the lack of "clinical verification." Tr. 418. However, as noted by Plaintiff, the record before the ALJ included extensive clinical evidence of upper right extremity impairment, that was *not* considered by the ALJ at step two, including: decreased right upper extremity strength, decreased shoulder range of motion and rotation, and tenderness. Tr. 324, 332, 358, 362, 366, 394, 402, 643-44, 652, 653 (noting possible rotator cuff tear), 661, 847, 854, 862, 870, 874, 880.

Finally, the ALJ correctly noted that Plaintiff sought treatment for his right shoulder in April 2017, "over a year after the end of the closed period," and was diagnosed with a right shoulder tear in May 2017. Tr. 418 (citing Tr. 663, 676, 725); *see Carmickle*, 533 F.3d at 1165 (evidence from outside relevant period is of limited relevance). However, this evidence does not negate the substantial clinical evidence, as discussed in detail above, of upper right extremity impairment during the relevant period. For all of these reasons, the Court finds the ALJ erred in considering whether Plaintiff's claimed right upper extremity impairment was a medically determinable impairment at step two.

Defendant briefly argues that even if the Court finds the ALJ erred at step two, any error is harmless because the ALJ accounted for any upper extremity

impairment by limiting Plaintiff to occasional bilateral overhead reaching in the assessed RFC. ECF No. 15 at 18 (citing Tr. 418). An error is harmless if "there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*quoting Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1197 (9th Cir. 2004)). Thus, if a claimant prevails at step two and the ALJ considers all impairments—regardless of severity—in the subsequent steps, an ALJ's failure to consider an impairment "severe" is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Here, Plaintiff prevailed at step two; and Defendant generally contends that the ALJ "discussed [Plaintiff's] right shoulder pain allegation," and "accounted for [Plaintiff's] testimony on the matter by restricting him from overhead reaching." ECF No. 15 at 17-18 (citing Tr. 418).

However, the Court's review of the record indicates that the ALJ did not consider the effects of Plaintiff's claimed right upper extremity impairment, and in fact did not consider most of the medical records that evaluated or treated Plaintiff's upper extremity pain, as cited extensively above, at any of the subsequent steps of the sequential evaluation. *See* Tr. 420-24; *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012) (exclusion of a severe impairment may result in a "residual functional capacity determination [that is] incomplete, flawed, and not supported by substantial evidence in the record."). As noted by Plaintiff, the ALJ's error in considering whether his right upper extremity was a medically determinable impairment "is particularly erroneous because the RFC has no

manipulative limitations besides a reduction in overhead reaching,"[3] despite

treating physician Dr. Crank's opinion that Plaintiff's "right shoulder impairment

alone resulted in an inability to perform most basic work activities, including

handling and reaching." ECF No. 10 at 4 (citing Tr. 333, 419). This is

distinguishable from cases in which the ALJ discussed limitations arising from an

impairment with specificity at subsequent stages of the sequential analysis, despite

not finding an impairment severe at step two. *See Lewis v. Astrue,* 498 F.3d 909,

911 (9th Cir. 2007) (holding that ALJ's failure to list plaintiff's bursitis as a severe

impairment at step two was harmless where ALJ specifically discussed bursitis and

its effects when identifying the basis for limitations in the RFC; and considered

limitations caused by bursitis at step four).

Thus, the ALJ's error in considering whether Plaintiff's right upper extremity

impairment was medically determinable impairment at step two was not harmless.

This case must be remanded in order to determine whether Plaintiff's right upper

extremity is a medically determinable impairment, and, if so, to consider any

---

[3] The RFC limited Plaintiff to "occasionally reach[ing] bilaterally overhead";

however, the Court is unable to discern substantial evidence in the ALJ's decision

to support this limitation. Regardless, as indicated herein, the RFC shall be

reassessed on remand after reconsidering the step two findings, and the subsequent

steps in the sequential evaluation.

credible limitations arising out of Plaintiff's right upper extremity impairment at all subsequent steps in the sequential evaluation.

**B. Additional Assignments of Error**

Plaintiff additionally argues that the ALJ improperly rejected the medical opinions of Dr. Jeremiah Crank and Dr. Mary Pellicer; improperly rejected a "DSHS disability benefits approval"; and improperly considered Plaintiff's symptom claims. ECF No. 15 at 5-20; Tr. 420-24. However, the ALJ's error at step two requires remand for proper consideration of Plaintiff's medically determinable impairments and to reconsider each of the remaining steps in the five-step sequential evaluation, incorporating any additional impairments and work limitations possibly caused by Plaintiff's claimed right upper extremity impairment. As the ALJ's error at step two impacts all aspects of the ALJ's decision, the ALJ is instructed to reweigh the medical opinion evidence of record, reconsider Plaintiff's symptom claims, and reevaluate Plaintiff's RFC.

**REMEDY**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280

(9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ erred at step two, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Instead, the Court remands this case for further proceedings. On remand, the ALJ should reconsider the step two finding. The ALJ should also reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating the opinions, supported by substantial evidence. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from a

ORDER ~ 15

medical expert.  Finally, the ALJ should reconsider Plaintiff's symptom claims, the remaining steps in the sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

**ACCORDINGLY, IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, ECF No. 10, is **GRANTED**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2.  Defendant's Motion for Summary Judgment, ECF No. 15, is **DENIED**.

3.  Application for attorney fees may be filed by separate motion.

The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** January 2, 2020.

_____*s/Fred Van Sickle*_____
Fred Van Sickle
Senior United States District Judge